UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Jason Goode,<br>    *Plaintiff*, | ) CASE NO. 3:24-cv-00345 (KAD)<br>)<br>) |
| v. | )<br>) |
| Joseph Jones<br>    *Defendant*. | ) September 16, 2025<br>) |

<u>**MEMORANDUM OF DECISION**</u>
**RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 25) AND PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT (ECF NO. 30)**

Kari A. Dooley, United States District Judge:

Plaintiff Jason Goode ("Plaintiff" or "Goode"), a sentenced inmate, filed this civil rights action against Defendant Joseph Jones ("Defendant" or "Jones"), a Lieutenant at the now-closed Northern Correctional Institution, pursuant to 42 U.S.C. § 1983, alleging an Eighth Amendment violation. He claims that Jones's use of in-cell restraints amounted to deliberate indifference to his mental health needs.[1] Following initial review under 28 U.S.C. § 1915A, the Court allowed Plaintiff's Eighth Amendment deliberate indifference claim to proceed against Defendant in his individual capacity. Initial Review Order ("IRO"), ECF No. 11. Defendant has moved for summary judgment. Mot. for Summ. J. ("Def.'s Mot."), ECF No. 25. Plaintiff objects and also moves for summary judgment. Pl.'s Opp'n, ECF No. 30-1.[2] Defendant elected not to file a Reply brief. For the following reasons, Defendant's motion for summary judgment is GRANTED and Plaintiff's cross-motion for summary judgment is DENIED.

---

[1] Plaintiff was sentenced August 11, 1995, to a term of thirty-five years. *See* Connecticut State Department of Correction Inmate Information, https://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=228240 (last visited Sept. 5, 2025). Plaintiff has since been moved to the Osborn Correctional Institution. *Id*.

[2] Plaintiff's filings in opposition were originally docketed at ECF No. 30. However, in the course of docketing several of the pages were improperly scanned. A corrected version was therefore separately docketed at ECF No. 30-1, and the original filing at ECF No. 30 was sealed. Though they are identical to those at ECF No. 30, the Court considers only the filings at ECF No. 30-1 in deciding this motion. *See* Docket Entry Correction, ECF No. 31.

**Standard of Review**

A motion for summary judgment may be granted only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113–14 (2d Cir. 2017). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage*, 875 F.3d at 113-14 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Which facts are material is determined by the substantive law. *Anderson*, 477 U.S. at 248. "The same standard applies whether summary judgment is granted on the merits or on an affirmative defense. . . ." *Giordano v. Market Am., Inc.*, 599 F.3d 87, 93 (2d Cir. 2010).

The moving party bears the initial burden of informing the court of the basis for its motion and identifying the admissible evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). He cannot "rely on conclusory allegations or unsubstantiated speculation" but "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 44 (2d Cir. 2015) (quotation marks and citation omitted). To defeat a motion for summary judgment, the nonmoving party must present such evidence as would allow a jury to find in his favor. *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

The Court resolves all ambiguities and draws all permissible factual inferences in favor of the non-moving party. *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 141 (2d Cir. 2012). Although the Court is required to read a self-represented party's papers liberally and

interpret them "to raise the strongest arguments that they suggest," *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)), "unsupported allegations do not create a material issue of fact" and do not overcome a properly supported motion for summary judgment. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

**Facts and Procedural History**[3]

The parties agree that Plaintiff accumulated many disciplinary infractions while incarcerated. Def.'s Local Rule 56(a)(1) Statement ("Def.'s LRS"), ECF No. 25-3, at ¶ 2; Pl.'s Local Rule 56(a)(2) Statement ("Pl.'s LRS"), ECF No. 30-1,[4] at 26–36, ¶ 2 (admitting he has a "robust number of disciplinary reports"). On March 27, 2021, around 1:30 PM, Plaintiff received a disciplinary report for interfering with safety and security. Def.'s LRS at ¶ 6; Pl.'s LRS at ¶ 6. About 25 minutes later—at 1:55 PM—Plaintiff received a second disciplinary report for refusing his housing assignment. Def.'s LRS at ¶ 7; Pl.'s LRS at ¶ 7.

At approximately 1:50 PM Plaintiff was placed in in-cell restraints. Def.'s LRS at ¶ 8 (stating Plaintiff was placed in restraints at 1:50 PM); Pl.'s LRS at ¶ 8 (agreeing that he was placed in in-cell restraints "during the latter hour of 1 pm"). Plaintiff was released the next morning at around 10:05 AM. Def.'s LRS at ¶ 10; Pl.'s LRS at ¶ 10. Plaintiff's complaint is based on what occurred while he was restrained.

---

[3] The relevant facts are taken from Defendant's Local Rule 56(a)1 statement and supporting exhibits, ECF No. 25-3, and Plaintiff's Local Rule 56(a)2 statement and supporting exhibits, ECF No. 30-1 at 26–36, as well as the record evidence. All facts set forth herein are undisputed unless otherwise indicated.

[4] Plaintiff's opposition / cross-motion and its associated exhibits are docketed at ECF No. 30-1. Because some of the individual filings are page-numbered and some are not, when the Court cites to the page numbers of any document at ECF No. 30-1, it cites to the numbers assigned by the CMECF system. Plaintiff's LRS is located on pages 26–36 of ECF No. 30-1. When the Court cites to paragraph numbers within Plaintiff's LRS, it refers to paragraphs within that range of pages.

While in the restraints, Plaintiff received a mattress, blanket, clothing, meals, and drinks. Def.'s LRS at ¶ 9; Pl.'s LRS at ¶ 9 (denying that he received a pillow). The parties disagree as to the extent to which DOC personnel's monitored Plaintiff while he was restrained. Def.'s LRS at ¶ 9 (stating that Plaintiff "was monitored every 15 minutes when on in-cell status"); Pl.'s LRS at ¶ 9 (stating that correctional officers "merely glanced into Plaintiff's cell window and proceed[ed] with their housing unit tours," and did not offer him bathroom breaks or hygiene items).

Plaintiff included additional material facts in his LRS, which are supported by citations to his own affidavit, ECF No. 30-1 at 39–41, and/or other evidence in the record. Defendant neither confirms nor denies the following facts in its briefing. Plaintiff submits that he was not provided with hygiene products while he was restrained. Pl.'s LRS at ¶¶ 23–24. Because of the lack of bathroom breaks and the positioning of his restraints, Plaintiff urinated and defecated on himself. *Id*. at ¶ 25. Plaintiff states that he was not combative with correctional staff while in in-cell restraints, *id*. at ¶ 26, and that Defendant had knowledge of his mental health issues, which exacerbated his behavior, *id*. at ¶ 32.

After his release from in-cell restraints, Plaintiff filed four custody grievances: (1) custody grievance number 141-21-165 ("Grievance -165"); (2) custody grievance number 141-21-178 ("Grievance -178"); (3) custody grievance number 141-21-179 ("Grievance -179"); and (4) custody grievance number 141-21-183 ("Grievance -183"). Def.'s LRS at ¶¶ 15–18; Pl.'s LRS at ¶¶ 15–18. Plaintiff also filed two health services' grievances.[5] Def.'s LRS at ¶¶ 19–20.

Plaintiff filed Grievance -165 on April 9, 2021, and it was denied and not appealed. Def.'s LRS at ¶ 15; Pl.'s LRS at ¶ 15. On May 4, 2021, Plaintiff filed Grievance -178, which was rejected.

---

[5] The parties agree that these health services' grievances are irrelevant as to this motion. Pl.'s Opp'n at 8; Def.'s Mem. in Supp. at 12. And the Court has reviewed Grievances -179 and -183, and concludes that they are unrelated to the March 27 incident and irrelevant to this decision. *See* Def. Mot., Ex. 16, ECF No. 25-19 at 55–58; Def. Mot., Ex. 17, ECF No. 25–20, at 56–57.

4

Def.'s LRS at ¶ 16; Pl.'s LRS at ¶ 16. The parties dispute whether it was properly rejected as procedurally noncompliant. Def.'s LRS at ¶ 16; Pl's LRS at ¶ 16.

**Discussion**

Defendant moves for summary judgment on three grounds: (1) Plaintiff failed to exhaust his administrative remedies before filing suit; (2) Plaintiff failed to demonstrate that a constitutional violation occurred; and (3) Defendant is entitled to qualified immunity. Def.'s Mot. at 1. Because exhaustion is dispositive here, the Court addresses only that argument.

The Prison Litigation Reform Act ("PLRA") requires a prisoner pursuing a federal lawsuit to exhaust available administrative remedies before a court may hear his case. *See* 42 U.S.C. § 1997e(a) (providing in pertinent part that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *see also Ross v. Blake*, 578 U.S. 632, 635 (2016). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Prisoners "cannot satisfy the PLRA's exhaustion requirement solely by . . . making informal complaints" to prison officials. *Macias v. Zenk*, 495 F.3d 37, 44 (2d Cir. 2007); *see also Day v. Chaplin*, 354 F. App'x 472, 474 (2d Cir. 2009) (summary order) (affirming grant of summary judgment for failure to exhaust administrative remedies and stating that informal letters sent to prison officials "do not conform to the proper administrative remedy procedures").

The PLRA requires "proper exhaustion," meaning the inmate must use all steps required by the administrative review process applicable to the institution in which he is confined. *Jones v.*

5

*Bock*, 549 U.S. 199, 217–18 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)); *see also Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (exhaustion, which "is mandatory," necessitates "using all steps that the [government] agency holds out, and doing so properly").

An inmate's failure to exhaust administrative remedies is only excusable if the remedies are in fact unavailable. *See Ross*, 578 U.S. at 642. The Supreme Court has determined that "availability" in this context means that "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id*. (quotation marks and internal citations omitted).

The *Ross* court identified three circumstances in which a court may find that internal administrative remedies are not available to prisoners under the PLRA. *Id*. at 643–44. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id*. at 643. "Next, an administrative remedy scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id*. Finally, an administrative remedy is not "available" when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*. at 644. The Second Circuit has noted that "the three circumstances discussed in *Ross* do not appear to be exhaustive," *Williams v. Priatno*, 829 F.3d 118, 123 n.2 (2d Cir. 2016), but the Court is guided by them, *see Mena v. City of New York*, 2016 WL 3948100, at *4 (S.D.N.Y. July 19, 2016).

Exhaustion of administrative remedies is an affirmative defense. *See Jones*, 549 U.S. at 216. Thus, Defendant bears the burden of proof. *See Hubbs v. Suffolk Cnty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015). Once Defendant establishes that administrative remedies were not exhausted before the inmate commenced the action, Plaintiff must present evidence showing that

6

he did exhaust his administrative remedies or establish that administrative remedy procedures were not available to him. *See id*.

The Connecticut DOC "requires inmates to submit grievances in accordance with Administrative Directive 9.6 ('AD 9.6')," which provides procedural rules and deadlines for processing general inmate requests. *Riles v. Buchanan*, 656 F. App'x 577, 579 (2d Cir. 2016). Defendant appended to his motion the version of AD 9.6 that was in effect on March 28, 2021.[6] *See* Def. Mot., Ex. 4 ("AD 9.6"), ECF No. 25-7.

Administrative Directive 9.6(6)(A) requires an inmate to "attempt to seek informal resolution prior to filing an inmate grievance." The inmate may attempt to seek informal resolution verbally. *Id*. If an inmate's verbal attempt is unsuccessful, the inmate must submit a written request on a CN 9601 form. *Id*. Prison staff must respond to an inmate's CN 9601 request within fifteen business days after its receipt. *Id*.

If the inmate is not satisfied with the prison staff's response, the inmate may file a "Level 1" grievance using a CN 9602 form. AD 9.6(6)(C). An inmate filing a Level 1 grievance must attach the staff member's response to the CN 9601 request. *Id*. If the inmate was unable to obtain a CN 9601 form, "did not receive a timely response to the inmate request," or has "a similar valid reason" for not attaching a staff member's response on the CN 9601 form, "the inmate shall include

---

[6] The version of A.D. 9.6 applicable to Plaintiff's claim is not the version of AD 9.6 in effect today. The current version, with an effective date of April 30, 2021, is available on the DOC's website. *See* DOC, *Administrative Directive Chapter 9.6*, https://portal.ct.gov/-/media/doc/pdf/ad/ad9/ad_0906_effective_04302021.pdf?rev=b9edceb79dbd4cbdb9dd09297664d04a&hash=E8BE08DD74CEE3C3C23D1FCB63DDAE0E (last visited Aug. 29, 2025); *Quint v. Robinson*, No. 3:23-CV-226 (VAB), 2024 WL 2801718, at *2 n.1 (D. Conn. May 31, 2024) (noting that "[t]he Court can take judicial notice of the State of Connecticut Administrative Directives on the Department of Correction's website."). Because the events in question occurred on March 27–28, 2021—before the current version of A.D. 9.6 went into effect—the Court considers whether Plaintiff exhausted his administrative remedies under the 2013 version of AD 9.6, with an effective date of August 15, 2013. *See Cunningham v. Lupis*, No. 3:21-CV-00273 (SALM), 2022 WL 2981572, at *4 n.5 (D. Conn. July 28, 2022) (evaluating whether the plaintiff exhausted administrative remedies under the 2012 version of AD 8.9 in late 2019 and early 2020 because the "[p]laintiff could not have possibly complied with an administrative directive that was not in effect, or even in existence, at the time he filed the Health Services Review."). Accordingly, all references to "AD 9.6" in this Order refer to the 2013 version, not to the current version available on the DOC's website. *See id*.

an explanation indicating why CN 9601, Inmate Request Form, is not attached." *Id*. The inmate must submit a completed CN 9602 form "within 30 calendar days of the occurrence or discovery of the cause of the grievance." *Id*.

All Level 1 grievances "shall be reviewed, investigated and decided with the outcome indicated by one of the following dispositions: Rejected, Denied, Compromised, Upheld or Withdrawn." AD 9.6(6)(D). The disposition must be documented on the CN 9602 form. *Id*. Grievances that are "upheld shall be given an appropriate and meaningful remedy." *Id*.

Grievances may also be "returned without disposition." A.D. 9.6(6)(E). "A grievance may be returned without disposition to the inmate for failure to: 1. attempt informal resolution; 2. adequately explain why a response to CN 9601, Inmate Request Form, is not attached; or, 3. comply with the provisions of Section 5(E)(1-5) of this Directive." *Id*. "Returned without disposition signifies that the grievance has not been properly filed and may be re-filed after the inmate has corrected the error." *Id*.

An inmate may appeal a denied or rejected grievance to the next level. AD 9.6(6)(G). But "[a] grievance returned without disposition due to a failure to comply with the procedural requirements . . . may not be appealed." *Id*. "An inmate may appeal a Level 1 disposition to Level 2 within five (5) calendar days of receipt of the decision." A.D. 9.6(6)(K). Prison staff must provide a response to the appeal within thirty business days. *Id*. This "Level 2" appeal is "the final level of appeal for all grievances[.]" *Id*. "Level 3" review is available for certain categories of grievances. *See* AD 9.6(6)(L). Only one of those categories is relevant here, that is, when the DOC's response to a Level 2 grievance is untimely.

Here, although Plaintiff filed multiple grievances in the aftermath of the March 2021 incident, only two could possibly relate to the conduct alleged in his Complaint.

The first, Grievance -165, was filed April 9, 2021. *See* Def. Mot., Ex. 14 ("Def.'s Ex. 14"), ECF No. 25-17, at 54–60. Therein, Plaintiff alleged deliberate indifference to his mental health needs, in response to his housing placement on March 29, 2021, but did not mention his March 27 placement in restraints. *Id*. at 56–58. It was denied on May 5, 2021 and Plaintiff did not appeal. Def.'s LRS at ¶ 15; Pl.'s LRS at ¶ 15. Further, Plaintiff acknowledges, in his Local Rule 56(a)(2) Statement, that "this grievance has no bearing on the instant action." Pl.'s LRS at ¶ 15.

The second, Grievance -178, was filed May 4, 2021. *See* Pl. Opp'n, Ex 1 ("Pl.'s Ex. 1"), ECF No. 30-1, at 37–38; Def. Mot., Ex. 15 ("Def.'s Ex. 15"), ECF No. 25-18, at 55.[7] This grievance addressed Plaintiff's placement in in-cell restraints on March 27, 2021, but was untimely under AD 9.6(6)(C) because it was not filed "within 30 calendar days of the occurrence or discovery of the cause of the grievance," and it was rejected for that reason on May 24, 2021. *See id*. Defendant has therefore shown that Plaintiff failed to exhaust his administrative remedies, and the burden shifts to Plaintiff to rebut that showing. *See Hubbs*, 788 F.3d at 59.

Attempting to do so, Plaintiff argues that the grievance procedures were vague and that his subsequent appeals on June 12 and July 24, 2021, were sufficient to constitute exhaustion. *See* Pl. Opp'n at 7, 14–18. With respect to vagueness, he attributes his delay in filing Grievance-178 to the ambiguity of AD 9.6, which provides that a Level 1 grievance must be filed "within 30 calendar days of the occurrence *or discovery of the cause of the grievance*." AD 9.6(6)(C) (emphasis added); Pl.'s Opp'n at 14–16; Pl.'s Decl. at ¶¶ 2–3. Relying on the "discovery of the cause" language, Plaintiff posits that he "opted" to file his grievance after he "discovered" the cause of the grievance because he believed that such an approach complied with AD 9.6. *See* Pl. Opp'n at 15–16. He cites

---

[7] Grievance -178 is dated May 4, 2021, and the grievance indicates it was received May 7, 2021. Def.'s Ex. 15 at 55. The discrepancy between these dates is immaterial because the grievance would be untimely on either date.

9

to *Ross*, 578 U.S. at 643, to support his argument that administrative remedy procedures were in fact unavailable to him because the language confused him to the point of unavailability. *See* Pl. Opp'n at 16.

Plaintiff's vagueness argument fails for two reasons. First, although the Second Circuit has recognized that the Connecticut DOC Administrative Directives are "rigorous in some respects," it has also concluded that they are "not so opaque as to be unavailable[.]" *Riles v. Buchanan*, 656 F. App'x 577, 581 (2d Cir. 2016); *Rosa v. Biela*, No. 3:22-CV-865 (VAB), 2025 WL 1488024, at *7 (D. Conn. May 23, 2025). But more to the point, even if the Court accepts Plaintiff's assertion that the 30-day period began running when he discovered the cause of his grievance, Plaintiff's deadline remains the same. There is no dispute that Plaintiff's placement and time spent in in-cell restraints is "the cause of the grievance," and it would be absurd to conclude that Plaintiff was *unaware* of being restrained, in real time, as it was happening. Construing all facts favorably to Plaintiff, at the latest, Plaintiff discovered the cause of the grievance on March 28, 2021, the date on which both parties agree he was released from restraints. Thus, any grievance related to the use of in-cell restraints was due within 30 calendar days of March 28, whether calculated under the "occurrence" or "discovery of the cause of the grievance" language. A.D. 9.6(6)(C). To be timely, Plaintiff must have filed his Level 1 Grievance on or before April 27, 2021. Plaintiff admits that he filed his grievance after that date, Pl.'s LRS at ¶ 16, and the grievance was therefore untimely.

With respect to Plaintiff's efforts to appeal Grievance -178, he contends that he submitted a Level 2 appeal on June 12, 2021, and a subsequent Level 3 appeal on July 24, 2021, after receiving no response to his Level 2 Submission. Pl.'s Opp'n at 16–17. In support, Plaintiff cites his affidavit. Pl.'s Decl. at ¶ 2. Defendant does not provide any evidence at all regarding Plaintiff's appeals, or lack thereof, of Grievance -178. Defendant simply writes that "[t]he grievance was

rejected as procedurally non-compliant on May 24, 2021." Def.'s Mem. in Supp. at 13 *compare with id*., Defendant's description of Grievance -165 ("The grievance was denied on May 5, 2021. *No appeal was taken by the Plaintiff*." (emphasis added)).

There is thus a disputed issue of fact as to whether Plaintiff appealed the rejection of Grievance -178. However, based on the date of Plaintiff's first appeal, this factual dispute is not material. Administrative Directive 9.6 requires that an inmate seeking to "appeal a Level 1 disposition to Level 2" must do so "within (5) calendar days of receipt of the decision." AD 9.6(6)(K). Plaintiff attests that he filed his Level 2 appeal of Grievance -178 on June 12, 2021. Pl.'s Decl. at ¶ 2. That was 19 days after he received notice of Grievance -178's rejection on May 24, well outside the time limit set by AD 9.6.[8]

Plaintiff's undisputed failure to file his grievance within 30 days as required by AD 9.6 is enough, in and of itself, to constitute a failure to exhaust his administrative remedies. *See Jones*, 549 U.S. at 217-18 (recognizing that "'proper exhaustion' was required under the PLRA, and that this requirement was not satisfied when grievances were dismissed because prisoners had missed deadlines set by the grievance policy" (quoting *Woodford*, 548 U.S. at 93-95)); *see also Jones v. Johnson*, No. 3:15-CV-1135 (DJS), 2017 WL 1843692, at *3 (D. Conn. May 8, 2017) ("If the deadline to file a grievance about an issue has passed, claims concerning that issue are unexhausted and barred from federal court."). This is compounded by the fact that his Level 2 was itself untimely. In order to properly exhaust his administrative remedies, Plaintiff was "required to

---

[8] In *Quigley v. Rivera*, No. 3:19-CV-482 (KAD), 2023 WL 1801228, at *6 (D. Conn. Feb. 7, 2023), the Court held that "[a] Plaintiff's sworn statement that he filed a grievance to which he received no response creates a genuine issue of material fact on the question of exhaustion and is sufficient to defeat summary judgment." Crucially, though, in *Quigley*, the Plaintiff swore that he filed his Level 2 grievance the same day he received a decision on the corresponding Level 1 grievance, well within the time limit set by AD 9.6. *Id*. Here, Plaintiff himself swears that he filed his Level 2 grievance *outside* that time limit. As described below, a plaintiff cannot rely on an untimely grievance appeal to prove exhaustion. Therefore, the mere fact that Plaintiff submitted a Level 2 grievance that was itself untimely is immaterial to the issue of exhaustion.

11

comply with the procedural rules *at all levels of the grievance process*," and thus "his failure to timely file his grievance appeal establishes that he did not properly exhaust his administrative remedies." *Gamble v. Garcia et al.*, No. 3:20-CV-1273 (KAD), 2021 WL 3773305, at *6 (D. Conn. Aug. 25, 2021) (emphasis added).

Plaintiff also contends that DOC personnel's failure to respond to both of his appeals rendered the administrative remedy process unavailable. Even though Defendant does not mention or otherwise address these appeals, their existence and DOC's failure to acknowledge them does not change the result. This is not a scenario in which Plaintiff's grievance was filed belatedly due to prison officials' delay in responding to him. *See Olivencia v. Pun*, No. 3:21-CV-739 (OAW), 2022 WL 4329343, at *7 (D. Conn. Sept. 19, 2022) (citing *Sease v. Frenis*, No. 3:17-CV-770 (SRU), 2021 WL 260398, at *7 (D. Conn. Jan. 25, 2021), and holding that courts in this district have "denied a motion for summary judgment that argued that a plaintiff had failed to exhaust his administrative remedies by filing a grievance beyond the thirty-day window after his grievance had been returned without disposition."). Here, the evidence shows that prison officials responded to both his initial informal request and Grievance-178 itself. *See* Def.'s Ex. 15, at 55–57. Plaintiff submitted Grievance -178 on May 4, 2021, and he received a signed disposition indicating that it was rejected on May 24, 2021. *Id*. at 55. Though Plaintiff asserts, and Defendant does not contest, that DOC officials failed to respond to his grievance appeals, any delay with respect to those submissions occurred *after* Plaintiff's initial untimely grievance filing, *and after* his subsequent untimely appeal, and therefore is not relevant to his failure to exhaust his administrative remedies.

The Court concludes that Plaintiff failed to properly exhaust his administrative remedies before filing suit. Accordingly, Defendant's Motion is granted on this ground, and Plaintiff's

Cross-Motion for Summary Judgment is denied for the same reason.[9] The Court therefore need not address the parties remaining arguments.

**Conclusion**

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 25) is GRANTED. Plaintiff's Cross-Motion for Summary Judgment (ECF No. 30-1) is DENIED. The Clerk is directed to enter judgment for Defendant and close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 16th day of September, 2025.

                                          /s/ Kari A. Dooley
                                          KARI A. DOOLEY
                                          UNITED STATES DISTRICT JUDGE

---

[9] Plaintiff's Cross-Motion for Summary Judgment is denied on the additional ground that Plaintiff moves for summary judgment on an excessive force claim, but the Initial Review Order did not allow an excessive force claim to proceed. *See* IRO, ECF No. 11. The Court also notes that Plaintiff did not file a Local Rule 56(a)1 Statement of Facts in support of his Cross-Motion for Summary Judgment. *See Baltas v. Dones*, No. 3:22-CV-38 (MPS), 2023 WL 7300559, at *7 (D. Conn. Nov. 6, 2023) ("In deciding whether to deny a motion for summary judgment based on failure to comply with the local rules, courts in this circuit consider whether the court can fairly determine the undisputed facts of the case without a Rule 56(a)1 statement."); *see also Tross v. Ritz Carlton Hotel Co.,* 928 F. Supp. 2d 498, 503-04 (D. Conn. 2013) ("In this Circuit, a movant's failure to comply with a district court's relevant local rules on a motion for summary judgment permits, but does not require, a court to dispose of that motion.").